UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 19-06 (MJD/TNL)

UNITED STATES OF AMERICA,

      Plaintiff,

v.

ALAN WILMER ALSLEBEN,

      Defendant.

**GOVERNMENT'S SENTENCING POSITION**

The United States of America, by and through its attorneys, Erica H. MacDonald, United States Attorney for the District of Minnesota, and Jordan L. Sing, Assistant United States Attorney, submits this memorandum in connection with the sentencing of defendant Alan Wilmer Alsleben. Consistent with the parties' joint motion for a downward variance, (Dkt. 51), the United States seeks a sentence of time served followed by a one-year term of supervised release.

### Alsleben's Criminal Conduct

On September 13, 2018, Alan Wilmer Alsleben applied for a passport using someone else's identity and personal information. (PSR at ¶ 9.) Alsleben presented a driver's license that had his photograph, but bore the name of D.D.A. (*Id.*) Alsleben also provided a copy of D.D.A.'s birth certificate. (*Id.*) The defendant completed the passport application with all of D.D.A.'s personal information and signed the application under penalty of perjury. (*Id.*) Because D.D.A.'s social security number had been issued long after D.D.A.'s death, the passport application was flagged for additional investigation. (*Id.*) This effectively launched the first substantive

investigation into Alsleben's identity theft, which quickly revealed the extent to which Alsleben had assumed D.D.A.'s identity.  (*Id.* at ¶ 8.)  It also revealed that Alsleben was frequently crossing the southern border into Mexico.

On January 8, 2019, the grand jury charged Alsleben for the false statements in his passport application and with aggravated identity theft.  (Dkt. 1, PSR at ¶ 1.)  Alsleben subsequently was arrested in Texas on February 11 and detained pending his transport to Minnesota.  (Dkts. 8-9.)  Alsleben remained detained until his initial appearance in Minnesota on March 21, 2019.  (Dkt. 14.)  Following his pretrial release, and motivated to address the charges against him, Alsleben undertook numerous steps to unwind his identity theft.  (PSR at ¶ 15.)

Alsleben's efforts to remedy his criminal conduct extended to this prosecution.  At the time of charging, the narrative appeared bleak—an individual with a lengthy drug-related criminal history applying for a passport with a false identity while engaging in frequent border crossings.  It was not until Alsleben voluntarily proffered, with no promised benefit for doing so, that the government learned that the narrative did not appear to match reality.

According to Alsleben, he made the unfortunate decision over thirty years ago to assume the identity of another person.  (PSR at ¶ 8.)  Alsleben essentially purchased the identity of an unknown deceased child—D.D.A.—to avoid a family situation that had become untenable.  (PSR at ¶ 13.)  Alsleben immediately assumed D.D.A.'s identity and never looked back.  (PSR at ¶ 14.)  Since 1987, Alsleben essentially ceased to exist, as all of Alsleben's medical and legal documentation

2

tracked his D.D.A. identity. (*Id.* at ¶¶ 13-14.) This includes a lengthy period in Alsleben's life when he moved to the west coast, struggled with addiction, and committed numerous crimes in D.D.A.'s name. (*Id.* at ¶¶ 8, 60.) Notably, following his last conviction in 2009, Alsleben achieved sobriety, found religion, and obtained relative stability. (*Id.*) But, because it was easiest, Alsleben continued living his life as D.D.A. (*Id.* at ¶ 14.) Alsleben candidly shared this backstory, warts and all, and spoke of feeling trapped by a thirty-year-old mistake. Alsleben explained that his frequent border crossings were to assist his mother's efforts to obtain cheaper medical care. Alsleben sought the United States passport to ease the process of crossing the border.

Given Alsleben's candor, the parties engaged in lengthy discussions about the best way to find a just resolution. Alsleben agreed to prove his resolve in an attempt to establish that a just outcome did not require his imprisonment. (PSR at ¶ 3.) This required pleading guilty to passport fraud in exchange for a pathway to a potential dismissal of the aggravated-identity-theft count. (*Id.*) That path required that Alsleben comply with every condition of his presentence release and that he complete 350 hours of community service within a calendar year. (*Id.*) On June 26, 2019, Alsleben appeared and the Court deferred accepting his guilty plea to permit him a year's time to make good on his promises. (Dkts. 35-36.) Alsleben not only made good on his promises in six months' time, but also worked diligently to fully rectify his theft of D.D.A.'s identity. (PSR at ¶¶ 4, 15.) The parties now await Alsleben's sentencing hearing.

## The Presentence Report

The government agrees with the facts and conclusions of the PSR, which result in an advisory Guidelines range of 6-12 months' imprisonment based on a total offense level of 6 and a criminal history category of IV.  (PSR at ¶ 76.)   The government is unaware of any outstanding disputes about the PSR that would affect the applicable Guidelines range.  The applicable Guidelines range, however, is higher than the parties anticipated—due to some decaying criminal history points—and recommends additional measures of confinement.  (PSR at ¶¶ 76, 78.)  For this reason, the parties filed a joint motion for a downward variance to support their request for a sentence of time served followed by one year of supervised release. (Dkt. 51.)

## The Appropriate Sentence

All too rarely can the government tell a success story in its sentencing position.  But Alsleben has earned the distinction.  Alsleben turned a criminal indictment into an opportunity to reform his life.  And, to his credit, Alsleben maximized on that opportunity.  Alsleben quickly accepted responsibility, told the truth, and made good on his word to be held accountable and unwind the consequences of his actions.  The government respectfully submits that a sentence of time served followed by a one-year term of supervised release is sufficient, but not greater than necessary, to achieve a just sentence.

To be clear, Alsleben's criminal conduct remains serious.  Alsleben hijacked and tarnished someone else's identity.  In 1969, D.D.A. died at the age of 12.  (PSR at

4

¶ 8.) D.D.A.'s family not only had to cope with the death of a child, but also then had to grapple with the idea that someone else had lived as D.D.A. and committed crimes in D.D.A.'s name. Alsleben's conduct also undermines the rule of law and the safeguards it ensures. Alsleben manipulated numerous processes to fraudulently obtain D.D.A.'s birth certificate and social security number. Alsleben then used that information to obtain benefits and, ultimately, seek a false United States passport. Although Alsleben's conduct was not as nefarious as initially believed, Alsleben's conduct appears as the exception to the rule. Passport fraud and identity theft rarely are so innocuous. It is a fortunate coincidence that Alsleben's conduct did not seriously undermine someone else's finances or life circumstances.

But, while not an excuse, Alsleben's history and characteristics provide context to his crime. Approximately thirty years ago, as a young man, Alsleben faced a difficult familial situation. (PSR at ¶¶ 13, 48.) Instead of constructively addressing the situation, Alsleben made the regrettable decision to purchase someone else's identity and flee. (*Id*.) Although Alsleben escaped the situation, he effectively abandoned his two children. (*Id*. at ¶¶ 48-49.) Unfortunately, Alsleben's escapism ultimately resulted in methamphetamine addiction and committing numerous crimes to support his habit. (*Id*.) Alsleben lost decades of his life to this cycle. (*Id*.) Alsleben achieved sobriety in 2011, genuinely found religion, and began to put his life back together. (*Id*. at ¶¶ 50, 62.) He reestablished supportive family connections and ceased his drug-related criminal activity. (*Id*. at ¶¶ 50-54, 62.) But because he felt

trapped by his decision to assume D.D.A.'s identity, Alsleben chose not to tackle the challenging logistics of reestablishing his true identity.  (*Id.* at ¶ 14.)

By his own admission, Alsleben felt relief upon being charged here and used it as an opportunity to correct his past mistakes.  (*Id.* at ¶¶ 14, 52.)  Alsleben has worked hard to obtain correct identifying documents and inform all relevant authorities of his true identity.  (PSR at ¶ 15.)  Although this may be just deserts, it has required considerable time and effort.  Alsleben also has faced more tangible consequences.  Following his arrest, Alsleben's transport from Texas to Minnesota resulted in over 30 days of incarceration.  (PSR at ¶ F.1.)  And, upon his initial pretrial release, Alsleben served months on home detention.  (PSR at ¶ 4.)  Since his arrest, Alsleben has done nothing but comply with every condition placed upon him while cooperating with this investigation.  Alsleben then agreed to plead guilty to passport fraud and to perform 350 hours of community service within a calendar year.  (PSR at ¶ 3.)  Alsleben completed his community service six months early.  (*Id.* at ¶ 4).  Put simply, and to his credit, Alsleben has taken responsibility for his actions, faced tangible consequences, and all signs point to him never returning to criminal conduct.

## Conclusion

For these reasons—and those addressed in the parties' joint motion for a downward variance—the United States respectfully submits that a downward variance is appropriate and that a sentence of time served followed by a one-year term of supervise release fully comports with the sentencing factors of Title 18, United States Code, Section 3553(a).  (Dkt. 51.)  Such a sentence reflects the

seriousness of Alsleben's conduct, promotes respect for the law, and accounts for Alsleben's genuine efforts to atone for his conduct.

Dated: December 10, 2019                Respectfully Submitted,

                                        ERICA H. MACDONALD
                                        United States Attorney

                                        */s/ Jordan L. Sing*

                                        JORDAN L. SING
                                        Assistant United States Attorney
                                        Attorney ID No. 393084